IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE


WILLIAM C. BOND,

      Plaintiff,

v.                                    Civil Action No.: 1:16-02723-DAF

JOHNNY L. HUGHES, et al.

      Defendants.


**<u>MEMORANDUM OPINION AND ORDER</u>**

Pending before the court is Plaintiff's Complaint against various federal officials in Maryland. <u>See</u> Doc. No. 1. The Defendants are the United States Marshal for the District of Maryland, the Special Agent in Charge of the Federal Bureau of Investigation ("FBI"), and the United States Attorney for the District of Maryland. Plaintiff alleges cover-ups, surveillance and entrapment based on conclusory allegations and little basis in fact or, for that matter, law. Plaintiff also seeks $15 million from Government Defendants for compensatory damages and $30 million from them for punitive damages—and he does so 6 times. Plaintiff appears to seek a total of $270 million. Plaintiff's allegations are unavailing.

In addition, Plaintiff is a frequent litigant before this court. Typically, he alleges various blanket but unspecific

violations of his legal rights.  He is now admonished that his continuing to file frivolous and vexatious lawsuits may result in an order denying him further access to the court on such matters.

## I.   FACTUAL BACKGROUND

For several years, Plaintiff has protested what he claims to be "'provable corruption' in the Maryland U.S. courthouse." Id.  In April 2013, Plaintiff created a public relations campaign named the "Baltimore Corruption Wire."  He also created the phrase "White Guerilla Family" to refer to certain members of the Maryland federal judiciary.  Id.

Plaintiff alleges that principally due to his protests and corruption allegations he has been interviewed and surveilled by federal agents.  Plaintiff further alleges that members of the judiciary and other federal officials have conspired to violate his First Amendment and due process rights.  See id.  Plaintiff premises his causes of action on the United States Supreme Court's decision in Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).  In particular, Plaintiff alleges the following six unconstitutional acts:[1]

• *Count I* – On July 19, 2013 and July 30, 2013, federal agents questioned plaintiff "regarding the

---

[1] To the extent Plaintiff's Complaint alleges any statutory claims, the court addresses them in footnote 2, *infra*.

potential safety of various government officials and federal judges," in an effort to "prevent and/or to intimidate plaintiff's planned demonstrations . . .." Doc. No 1.

• *Count II* – Plaintiff alleges that he met with "activists" in July of 2013 to plan a protest at the U.S. District Courthouse, but that the activists "were undercover U.S. government agents sent (1) with the clear intention to sabotage plaintiff's U.S. courthouse protests in any way possible and (2) to criminally entrap plaintiff by attempting to engage plaintiff in discussions of violence against federal officials[.]" Doc. No. 1.

• *Counts III & IV* – Plaintiff alleges in the fall of 2013, a Deputy U.S. Marshal informed Plaintiff that he had been under surveillance since 2010. Plaintiff alleges that this surveillance violated his constitutional rights. See Doc. No. 1.

• *Count V* – Plaintiff alleges that on September 29, 2015, a Deputy U.S. Marshal "invade[d]" his pro se litigant work and attempted to criminally entrap him." Doc. No 1.

• *Count VI* – Plaintiff alleges that the Defendants "have at all times since 2001 until present been in an

extended conspiracy to deprive plaintiff of his First
Amendment & due process rights," and that "[w]hen a
new U.S. Attorney was assigned to Maryland in 2006,
part of his assignment was to continue to ignore
and/or cover-up the aforementioned conspiracy against
plaintiff."  Doc. No 1.

With respect to each count, Plaintiff alleges that "[t]hese
intentional, knowing, bad-faith, and illegal acts by the
defendants caused plaintiff great worry, anxiety, fear,
sleeplessness, etc., amongst many other things, as it was clear
to plaintiff that his enemies would stop at nothing to defeat
his constitutional rights."  Doc. No 1.  Subsequently, the
United States filed its Motion to dismiss Plaintiff's Complaint,
or, in the alternative, substitute the United States as the sole
Defendant and dismiss the Complaint.  See Doc. No. 16.

## II.  APPLICABLE LEGAL STANDARDS

Next, the court articulates the legal standards pertinent
to Rules 12(b)(1), 12(b)(6) and 8(a)(2) of the Federal Rules of
Civil Procedure ("Civil Rules"), respectively.

### A. Rule 12(b)(1)

The court commences its analysis with subject matter
jurisdiction.  A motion to dismiss for lack of subject matter
jurisdiction under Federal Rule of Civil Procedure 12(b)(1) asks
"whether the court has the competence or authority to hear the

4

case." Davis v. Thompson, 367 F. Supp. 2d 792, 799 (D. Md. 2005). Prior to reaching the merits of a case, a federal court first must determine that it has jurisdiction over the claim presented. See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007) (citing Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 93-102 (1998)). When a defendant moves to dismiss under Rule 12(b)(1), the plaintiff bears the burden of proving that subject matter jurisdiction exists. See Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) (citing Richmond, Fredericksburg & Potomac R.R. Co. v. U.S., 945 F.2d 765, 768 (4th Cir. 1991)). The requirement that the plaintiff establish subject matter jurisdiction "as a threshold matter 'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" Steel Co., 523 U.S. at 94—95 (quoting Mansfield, C. & L. M. R. Co. v. Swan, 111 U.S. 379, 382 (1884)). Hence, "[t]he objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006) (citing Fed. R. Civ. P. 12(b)(1)).

In circumstances where a defendant challenges subject matter jurisdiction, "the district court is to regard the pleadings as mere evidence on the issue, and may consider

evidence outside the pleadings without converting the proceeding to one for summary judgment." Evans, 166 F.3d at 647 (quoting Richmond, Fredericksburg & Potomac R.R. Co., 945 F.2d at 768); see also Williams v. U.S., 50 F.3d 299, 304 (4th Cir. 1995) (When considering exhibits beyond the pleadings, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.") (internal quotation omitted). Under such circumstances, "the court may look beyond the pleadings and the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." Khoury v. Meserve, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (quotation omitted), aff'd, 85 F. App'x 960 (4th Cir. 2004). The court may properly grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." Davis, 367 F. Supp. 2d at 799 (citing Crosten v. Kamauf, 932 F. Supp. 676, 679 (D. Md. 1996)).

Dismissal for lack of subject matter jurisdiction tests whether the court has the authority to hear a case or controversy. After all, the "[f]ederal courts are courts of limited jurisdiction, constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." Gill v. PNC Bank et al., Civil

Action No. TDC-14-0677, 2015 WL 629004, at *3 (D. Md. Feb. 11, 2015) (quoting In re Bulldog Trucking, Inc., 147 F.3d 347, 352 (4th Cir. 1998)) (internal quotation marks omitted).  The federal courts are not like the state courts, which retain general jurisdiction.  It follows that this court, as a federal court, is empowered to exercise jurisdiction only when the Constitution and federal law so permit.[2]

There is a constitutional provenance at the heart of this principle.  Article III limits the subject matter jurisdiction of federal courts to "cases" and "controversies."  See Allen v. Wright, 468 U.S. 737, 750 (1984).  Consistent with the "cases" and "controversies" requirement, plaintiffs must demonstrate that they have standing to bring, and maintain, suit in federal court throughout the duration of litigation.  In fact, the United States Supreme Court has cast the doctrine of mootness as intertwined with standing: "the doctrine of standing set in a

---

[2] Generally speaking, courts should not be in the philosopher-king business of worrying about consequences so long as the law commands their behavior.  In fact, "judges should . . . strive (if humanly and so imperfectly) to apply the law as it is, focusing backward, not forward, and looking to text, structure, and history to decide what a reasonable reader at the time of the events in question would have understood the law to be—not to decide cases based on their own moral convictions or the policy consequences they believe might serve society best." Neil M. Gorsuch, *Of Lions and Bears, Judges and Legislators, and the Legacy of Justice Scalia*, 2016 Sumner Canary Lecture at Case Western Reserve University School of Law (Apr. 7, 2016), *in* 66 CASE W. RES. L. REV. 905, 906 (2016).

time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n. 22 (1997).  This is because the federal courts "are not permitted to render an advisory opinion."  Herb v. Pitcairn, 324 U.S. 117, 125—26 (1945).  So true is this that "[t]he Supreme Court has made clear that standing is an essential and unchanging part of that case-or-controversy requirement, one that states fundamental limits on federal judicial power in our system of government." Doe v. Obama, 631 F.3d 157, 160 (4th Cir. 2011) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); Allen, 468 U.S. at 750) (citations and internal quotation marks omitted). To satisfy the standing requirement, a plaintiff must demonstrate:

> (1) that he has suffered an "injury in fact" that is (a) particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Doe, 631 F.3d at 160 (citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180—81 (2000)).

Furthermore, a plaintiff cannot demonstrate standing by stating that he or she brings suit on behalf of the general

public.  "Plaintiffs may not establish their standing to bring
suit merely because they disagree with a government policy or
because they share the 'generalized interest of all citizens in
constitutional governance.'" Moss et al. v. Spartanburg Cnty.
Sch. Dist. Seven, 683 F.3d 599, 604–05 (4th Cir. 2012) (quoting
Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208,
217 (1974)).  Therefore, a plaintiff may not predicate her
standing to sue "upon an interest . . . which is held in common
by all members of the public, because of the necessarily
abstract nature of the injury all citizens share." Raffety v.
Prince George's Cnty. et al, 423 F. Supp. 1045, 1052 (D. Md.
1976) (quoting Schlesinger, 418 U.S. at 220) (internal quotation
marks omitted).

## B. Rule 12(b)(6)

"[An] important mechanism for weeding out meritless
claims," dismissal for failure to state a claim upon which
relief can be granted is premised on Rule 12(b)(6) of the Civil
Rules.  Fifth Third Bancorp v. Dudenhoeffer, 134 S. Ct. 2459,
2471 (2014).  A Rule 12(b)(6) defense asserts that even if all
the factual allegations in a complaint are true, they still
remain insufficient to establish a cause of action.  This might
be because prevailing law governing the adjudicator is set
against such a cause of action.  This court is also mindful that
"[w]hether a particular ground for opposing a claim may be the

9

basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract." Jones v. Bock, 549 U.S. 199, 215 (2007).

"The purpose of a Rule 12(b)(6) motion is to test the [legal] sufficiency of a complaint; importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999) (citations and internal quotation marks omitted). A plaintiff must allege "'enough facts to state a claim to relief that is plausible on its face'" and "'raise a right to relief above the speculative level.'" Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

The United States Supreme Court has maintained that "[w]hile a complaint . . . does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and internal quotation marks omitted). The court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D.

<u>Assocs. Ltd P'ship</u>, 213 F.3d 175, 180 (4th Cir. 2000).  Courts must also take care not conflate the veracity or even accuracy underlying the allegations that a plaintiff has leveled against a defendant with the allegations' likelihood of success.  While "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action," 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed. 2004), "assum[ing]" of course "that all the allegations in the complaint are true (even if doubtful in fact)," <u>Twombly</u>, 550 U.S. at 555, it is also the case that "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989).  Therefore, courts must allow a well-pleaded complaint to proceed even if it is obvious "that a recovery is very remote and unlikely." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  This is the United States Supreme Court's teaching in <u>Twombly</u>.  <u>See</u> <u>Twombly</u>, 550 U.S. at 555.

## C. <u>Rule 8(a)(2)</u>

Rule 8(a)(2) of the Civil Rules provides that "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677—78 (2009) (<u>citing</u> Federal Rule of Civil Procedure 8(a)(2)).  Rule 8(a)(2) requires plaintiffs to furnish

only "a short and plain statement of the claim showing that the pleader is entitled to relief," so that "the defendant [might have] fair notice of what the . . . claim is and the grounds upon which it rests." <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957). Thus, it is clear that Rule 8(a)(2) tends to interplay with Rule 12(b)(6) of the Civil Rules, which governs motions to dismiss.

Cognizant of these principles, the court advances to analyze Plaintiff's claims.

### III. DISCUSSION

### A. Plaintiff Has Stated No *Bivens* Action Against Defendants in their Individual Capacities; Plaintiff May Not Maintain a *Bivens* Action Against Defendants in their Official Capacities.

#### (1) *Individual Capacities*

Plaintiff bases his case on <u>Bivens</u>. In <u>Bivens</u>, the United States Supreme Court recognized a private cause of action for certain kinds of constitutional violations. In the Supreme Court's words, "[t]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." <u>Bivens</u>, 403 U.S. at 397 (<u>quoting</u> <u>Marbury v. Madison</u>, 5 U.S. 137, 163 (1803)). But Plaintiff must still satisfy the requirement that a <u>Bivens</u> claim has to state sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. As such, Plaintiff "must plead that <u>each</u>

Government-official defendant . . . has violated the Constitution." Id. at 676 (emphasis added). The Supreme Court also has asserted that "[i]ndividual government officials 'cannot be held liable' in a Bivens suit 'unless they themselves acted [unconstitutionally].'" Wood v. Moss, 134 S. Ct. 2056, 2070 (2014) (citing Iqbal, 556 U.S. at 683); Danser v. Stansberry, 772 F.3d 340, 349 (4th Cir. 2014) ("liability may be imposed based only on an official's own conduct.") (emphasis added).

Here, Plaintiff has not stated a Bivens claim against any of the Defendants. The body of the Complaint fails to identify SAC Perkins and Marshal Hughes. The Complaint contains no content explaining how either of these Defendants may have violated Plaintiff's constitutional rights. To the extent that they are named as supervisors of the federal agents discussed in the Complaint, Bivens does not permit respondeat superior liability. See Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) ("In a Bivens suit, there is no respondeat superior liability."); Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995) ("[T]here is no respondeat superior liability under Bivens. Defendants are liable for their personal acts only."). Thus, Plaintiff plainly has failed to state a Bivens claim as to SAC Perkins and Marshal Hughes.

With respect to U.S. Attorney Rod Rosenstein, Plaintiff's Complaint states: "[w]hen [Rosenstein] was assigned to Maryland in 2006, part of his assignment was to continue to ignore and/or cover-up the aforementioned conspiracy against Plaintiff." Doc. No. 1. Plaintiff, however, has supplied no facts at all to support his allegation that Rosenstein, _himself_, did anything to violate Plaintiff's constitutional rights. Plaintiff's conclusory allegations—he calls it a "cover-up" and a "conspiracy" but nothing more, Doc. No. 1,—fail to state a claim. See _Iqbal_, 556 U.S. at 681 (citing _Twombly_, 55 U.S. at 554-55). Therefore, Plaintiff has failed to state a _Bivens_ claim against U.S. Attorney Rosenstein.

(2) *Official Capacities*

The United States Court of Appeals for the Fourth Circuit maintains that "a _Bivens_ action does not lie against either agencies or officials in their official capacity." _Doe v. Chao_, 306 F.3d 170, 184 (4th Cir. 2002) (citing _FDIC v. Meyer_, 510 U.S. 471, at 484-86 (1994)); see also _Curtis v. Pracht_, 202 F. Supp. 2d 406, 419 (D. Md. 2002). Accordingly, to the extent that Plaintiff's claims against the Defendants are deemed to be based on their official capacities, _Bivens_ is not helpful to Plaintiff. Consequently, this Court lacks jurisdiction over such claims. In order to comprehensively treat the claims

presented, the court will address the remaining salient questions.

**B. <u>Plaintiff has No Standing to Bring a First Amendment Claim.</u>**

Plaintiff alleges that the unnamed FBI agents interviewed him to "prevent and/or to intimidate plaintiff's planned demonstrations at the Baltimore U.S. courthouse on August 4, 2013." Doc. No. 1. Under Fourth Circuit jurisprudence, an indispensable element of standing for purposes of First Amendment claims is that a plaintiff must demonstrate some injury-in-fact. "In First Amendment cases, the injury-in-fact element is commonly satisfied by a sufficient showing of 'self-censorship, which occurs when a claimant is chilled from exercising h[is] right to free expression.'" <u>Cooksey v. Futrell</u>, 721 F.3d 226, 235 (4th Cir. 2013) (citations omitted). In that context, "the chilling effect cannot 'arise merely from the individual's knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruit of those activities, the agency might in the future take some other and additional action detrimental to that individual.'" <u>Id</u>. at 236 (<u>quoting</u> <u>Laird v. Tatum</u>, 408 U.S. 1, 11 (1972)). Indeed, the Fourth Circuit impresses upon us that "'[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific

present objective harm or a threat of specific future harm [.]'"
Cooksey, 721 F.3d at 236 (quoting Laird, 408 U.S. at 13—14).

There is a raison d'être behind all this.  This court's
adjudicative competence has limits.  One of those limits is that
our Nation's federal courts may not be "transform[ed] . . . into
forums for taxpayers' generalized grievances about the conduct
of government."  Hein v. Freedom from Religion Found., Inc., 551
U.S. 587, 612 (2007) (plurality opinion) (citations and internal
quotation marks omitted).  Such a drastic move "would open the
Judiciary to an arguable charge of providing government by
injunction."  Id. (citations and internal quotation marks
omitted).  This aperture "would [also] deputize federal courts
as virtually continuing monitors of the wisdom and soundness of
Executive action, and that, most emphatically, is not the role
of the judiciary."  Id. (citations and internal quotation marks
omitted).  This course of conduct would not satisfy Article III,
which limits the jurisdiction of the federal courts to "cases"
and "controversies."

Plaintiff has furnished this court with no evidence of a
chilling effect on his speech.  Plaintiff does not seriously
contest that the reason for the interviews was concern about the
safety of federal judges and other government officials due to
Plaintiff's communications with them.  See Doc. No. 1.  However,
never does Plaintiff allege that the agents forbade him from

protesting nor did they take any actions to prevent the protests.  Other than Plaintiff's own speculation that the interviews were for the purpose of preventing him from protesting, he provides no evidence that his speech was chilled or that he self-censored himself.  He certainly did not do the latter.  Quite the contrary, Plaintiff appears to admit that subsequently he protested for several weeks.  <u>See</u> Doc. No. 1. There is no allegation whatsoever that any of the named Defendants did anything at all to restrict Plaintiff's First Amendment rights.

Accordingly, Plaintiff's First Amendment claim should be, and now is, dismissed.

**C.  <u>Plaintiff Fails to State a Due Process Transgression.</u>**

The Due Process Clause of the Fifth Amendment states: "nor shall any person . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. 5. There are two types of due process claims: (1) procedural due process claim which alleges a denial of fundamental procedural fairness, <u>see</u> <u>Fuentes v. Shevin</u>, 407 U.S. 67, 82 (1972); or (2) substantive due process, which alleges the exercise of power without any reasonable justification in the service of a legitimate governmental objective.  <u>See</u> <u>Rucker v. Harford Cty.</u>, 946 F.2d 278, 281 (4th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1097 (1992); <u>see also</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 331 (1986).

Under prevailing jurisprudence, substantive due process remains a fluid and flexible concept.  Violations of substantive due process take place only in circumstances where the government's actions in depriving a person of life, liberty, or property are so unjust that no amount of fair procedure can redeem their constitutionality.  "[T]he substantive due process guarantee protects against government power arbitrarily and oppressively exercised."  Cty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).  "Asserted denial is to be tested by an appraisal of the totality of facts in a given case."  Betts v. Brady, 316 U.S. 455, 462 (1942).  This means that "[something] which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial."  Id.  In one of those rare dissents that subsequently gained much currency, the second JUSTICE Harlan once explained:

> [T]he full scope of the liberty guaranteed
> by the Due Process Clause . . . is a
> rational continuum which, broadly speaking,
> includes a freedom from all substantial
> arbitrary impositions and purposeless
> restraints, . . . and which also recognizes,
> what a reasonable and sensitive judgment
> must, that certain interests require
> particularly careful scrutiny of the state
> needs asserted to justify their abridgment.

<u>Poe v. Ullman</u>, 367 U.S. 497, 543 (1961) (Harlan, J., dissenting from dismissal on jurisdictional grounds) (adopted by joint opinion in <u>Planned Parenthood of Se. Pa. v. Casey</u>, 505 U.S. 833, 848—49 (1992)).  Plaintiff has asserted only conclusory allegations of perceived due process violations.  For example, even though Plaintiff states that he was informed by a Deputy U.S. Marshal that he was being surveilled, Plaintiff does not indicate how, if at all, his due process rights were violated. Moreover, there also exists no allegation that the government conducted electronic surveillance of Plaintiff's home telephone without obtaining a warrant.  Additionally, Plaintiff fails to attribute any unconstitutional act (or omission) to the named Defendants. Accordingly, Plaintiff's due process claim is not meritorious.

As discussed below, none of the counts alleged by Plaintiff suffices to state a claim for violating due process.

<u>Count I</u>: Plaintiff alleges several law enforcement visits to him, "especially [an] attempt to arrest [P]laintiff for illegal weapons possession."  Doc. No. 1.  Plaintiff further alleges that "the timing" of these alleged actions was "intended with [only] one goal . . . in mind: to prevent and/or to intimidate [P]laintiff's planned demonstrations at the [United States Courthouse in Baltimore]."  Doc. No. 1.  Notably, Plaintiff does not mention a specific legal violation.

Plaintiff's Count I must be dismissed for both Rule 12(b)(6) and Rule 8(a)(2) deficiencies.  With respect to Rule 12(b)(6), Plaintiff fails to state a claim upon which relief can be granted because Plaintiff quite simply states no claim.  He refers vaguely to blanket "constitutional rights" at one point but no more.  Doc. No. 1.  Moreover, whether a complaint must be dismissed for failure to state a claim "depends on whether the allegations in the complaint suffice to establish [a requisite] ground, not on the nature of the ground in the abstract."  Jones, 549 U.S. at 215 (emphasis added).  Neither in the abstract nor in the allegations contained in the Complaint has Plaintiff stated a claim on whose basis relief might be available.

This brings the court to the Rule 8(a)(2) deficiency: "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 677—78 (citing Federal Rule of Civil Procedure 8(a)(2)).  Here, "the allegations are conclusory and not entitled to be assumed true." Iqbal, 556 U.S. at 681.  The alleged law-enforcement visits might have been supported with ample probable cause and/or compelling governmental interests, not necessarily conducted, if conducted they were, with the goal of intimidating Plaintiff (as he alleges).  See Doc. No. 1.  The Complaint is speculative and it glosses over that legitimate possibility.

Just like in Ashcroft, Plaintiff's omission as to the reasons
impelling the alleged governmental conduct render his complain
deficient.  556 U.S. at 680—81.

Furthermore, if there exist "more likely explanations [for
alleged defendant actions or omissions]," then "the[] [conduct
alleged] do[es] not plausibly establish th[e] purpose[s],"
motives and/or reasons that a plaintiff alleges guided the
defendant(s).  Id. at 681.  Here it is more likely that
Defendants visited Plaintiff and/or sought to arrest him because
of bona fide and perfectly lawful concerns about illegal conduct
on Plaintiff's part, rather than any retaliation Defendants
wanted to inflict on Plaintiff.  Accordingly, Count I is
dismissed for both Rule 12(b)(6) and Rule 8(a)(2) deficiencies.

Count II: Plaintiff alleges that "[a] 'black lives matter'
type activist contacted [him]" and then proceeded to "offer[] to
help with the planned protests, including by providing 'bodies'
to protest, money for advertising, and grassroots help in the
'black' community . . .."  Doc. No. 1.  But then, Plaintiff
alleges, on the appointed protest day neither this "activist"
nor his "wife" nor the 50 or more "bodies" Plaintiff had been
promised showed up.  Doc. No. 1.  Plaintiff points to his own
"[i]nformation and belief" that this "'activist' and his 'wife'
were undercover U.S. government agents sent . . . with the clear
intention to sabotage" the planned protests and "to criminally

entrap Plaintiff by attempting to engage [P]laintiff in discussions of violence against federal officials . . ..." <u>Id</u>.

Plaintiff states no actual legal claim. Consequently, Count II is dismissed for failure to state a claim under Rule 12(b)(6) of the Civil Rules. Moreover, for reasons similar to the court's Count I analysis, here Plaintiff states only "conclusory" allegations that are grounded solely in conjecture and speculation without any basis in fact. <u>Ashcroft</u>, 556 U.S. at 681. Plaintiff's Complaint neglects to consider the distinct possibility, and one that is far likelier than the conspiracy theory Plaintiff advances, that a genuine or even impersonator of a "Black Lives Matter" activist did interact with Plaintiff prior to the protest's appointed hour but, for reasons unbeknownst to Plaintiff, turned out to be a no-show on the protest's appointed hour.

This court has no warrant to hale federal officials, or for that matter <u>any</u> defendants, before the judicial system on such flimsy and legally deficient bases. This is impermissible under Rule 8(a)(2) of the Civil Rules. As a result, Plaintiff's Count II must be dismissed for both Rule 12(b)(6) and Rule 8(a)(2) deficiencies.

<u>Count III</u>: Plaintiff alleges that a deputy U.S. marshal (DUSM) was "spy[ing]" on Plaintiff since Plaintiff filed a similar suit against the U.S. Attorney for the District of

Maryland in 2010. Doc. No. 1. Here, Plaintiff mentions due process as the basis for Count III. However, it is the Fourth Amendment, instead of due process, that is the appropriate basis for challenging governmental acts of surveillance. "Substantive due process analysis is . . . inappropriate in . . . [a] case only if . . . [a] claim is covered by the Fourth Amendment." Lewis, 523 U.S. at 843; see also Katz v. United States, 389 U.S. 347 (1967); Klayman v. Obama, 957 F. Supp. 2d 1 (D.D.C. 2013). Thus, Count III does not survive the standard required by Rule 12(b)(6).

In addition, once again Plaintiff states only "conclusory" allegations that are grounded solely in conjecture and speculation without any basis in fact. Ashcroft, 556 U.S. at 681. This is quite like the court's aforementioned observations concerning Counts I and II. Count III thus falls short of satisfying Rule 8(a)(2) as well. Count III must be dismissed on account of both Rule 12(b)(6) and Rule 8(a)(2) deficiencies.

Count IV: Plaintiff alleges that the same DUSM "told [P]laintiff about how his surveillance of [P]laintiff continued in 2012, after [P]laintiff had lost his home, his dog, all his possessions, etc., and was living in an unelectrified 'squat' in a derelict building." Doc. No. 1. Plaintiff mentions "due process and civil rights" as the bases for this count. For the reasons given in the court's Count III analysis, Plaintiff's

Count IV must be dismissed for both Rule 12(b)(6) and Rule 8(a)(2) deficiencies.

Count V:  Plaintiff alleges that the same DUSM endeavored "to invade [Plaintiff's] pro se litigant work product" in a qui tam action Plaintiff had filed against various Government Defendants earlier.  Doc. No. 1.  Plaintiff further alleges that the DUSM "work[ed] in tandem with [a] U.S. judge . . . to criminally entrap" Plaintiff.  Id.  Here, Plaintiff does not even state a single legal basis for the claim.  Moreover, the allegations are just "conclusory."  Ashcroft, 556 U.S. at 681. For reasons materially indistinguishable from the ones already given in the earlier analyses, Count V must be dismissed for both Rule 12(b)(6) and Rule 8(a)(2) deficiencies.

Count VI:  Plaintiff alleges that "a federal judge [acted] with malice aforethought to have a 2001 federal case assigned to him, which he planned, in advance, to sabotage."  Doc. No. 1. Two other federal judges are alleged to have helped in covering this up.  Id.  According to Plaintiff, there was also a vast judicial conspiracy to "thwart his actions [repeatedly.]"  Id. Here, while Plaintiff alleges that certain Government Defendants "have at all times since 2001 until present been [involved] in an extended conspiracy to deprive [P]laintiff of his First Amendment [and] due process rights, his liberty, and his right to his own property, if not other constitutional deprivations,"

Plaintiff does not assert a cognizable legal right this alleged

conspiracy actually violates.  For reasons materially

indistinguishable from the ones already given in the earlier

analyses, Count VI must be dismissed for both Rule 12(b)(6) and

Rule 8(a)(2) deficiencies.

Consequently, all of Plaintiff's due process claims fail.

They must be dismissed.  The same, the court already has

explained, is true of the First Amendment claim—on the basis of

standing.  In short, all of Plaintiff's claims are to be

dismissed.[3]

### D. <u>Defendants are Entitled to Qualified Immunity.</u>

Qualified immunity protects federal officials from

liability in <u>Bivens</u> suits unless a plaintiff can plead "facts

showing (1) that the official violated a statutory or

constitutional right, and (2) that the right was 'clearly

---

[3]  It is difficult to understand whether Plaintiff's
Complaint incorporates any claim under the Federal Tort Claims
Act ("FTCA"), 28 U.S.C. § 2679(d)(1).  The court grants the
United States' motion to be substituted in place of individual
Defendants as to the FTCA claim.  (Doc. No. 16-1.)  Any tort
claim must be dismissed because Plaintiff failed to exhaust
administrative remedies.  The FTCA provides that a plaintiff
must exhaust administrative remedies by, inter alia, filing a
claim with the "appropriate Federal agency." 28 U.S.C. §
2675(a).  A tort claim against the United States is "forever
barred" unless it is presented in writing to such agency within
two years after the claim accrues.  28 U.S.C. § 2401(b).
Plaintiff has not submitted a claim to any federal agency with
respect to any tort claims.  Consequently, Plaintiff's FTCA
claim incorporating tort causes of action shall be forever
barred.

established' at the time of the challenged conduct." <u>Ashcroft</u>
<u>v. al-Kidd</u>, 563 U.S. 731, 735 (2011).  In order to satisfy the
first prong, a plaintiff <u>must</u> allege sufficient facts that "each
Government-official defendant, through the official's <u>own</u>
<u>individual actions</u>, has violated the Constitution."  <u>Iqbal</u>, 556
U.S. at 676 (emphasis added).  As for the second prong, the
right's delineations must be "sufficiently definite," so "that
any reasonable official in the defendant's shoes would have
understood that he was violating it."  <u>Plumhoff v. Rickard</u>, 134
S. Ct. 2012, 2023 (2014).  The reason is simple: Before
subjecting a federal official who was trying her mortal best to
suit for actions committed in the course and/or pursuit of duty,
the law must be certain that she had had adequate notice that
her conduct was <u>ultra vires</u>.

Here, Plaintiff cannot show that Defendants are not
entitled to qualified immunity because he has not sufficiently
pleaded the first element—that any of the Defendants violated
his constitutional rights.  Indeed, Plaintiff has not expressed
how any named Defendants trampled on his constitutional rights.
Thus, Defendants are entitled to qualified immunity.  The claims
leveled against them must be dismissed.

### IV.  <u>CONCLUSION</u>

This Complaint reads rather like a political thriller.  And
like other novels, in this Complaint there seem to be far too

much fiction, precious little fact, and copious innuendo—in

short, too many conclusory allegations—to commend it for its

veracity or even its plausibility.  This is not a salutary

feature.

Plaintiff, it seems, is intent on draining the Federal

Judiciary of our "limited resources."  Zatko v. California, 502

U.S. 16, 18 (1991) (per curiam).  The court, therefore, repeats

its admonition that Plaintiff should take care not to lose

credibility by filing vexatious and frivolous complaints.  The

reason is simple: "[E]very paper filed with the Clerk of this

[c]ourt, no matter how repetitious or frivolous, requires some

portion of the institution's limited resources.  A part of the

[c]ourt's responsibility is to see that these resources are

allocated in a way that promotes the interests of justice."  In

re McDonald, 489 U.S. 180, 184 (1989) (per curiam); see also

Martin v. District of Columbia Court of Appeals, 506 U.S. 1, 1

(1992) (per curiam) (applying this principle to "notorious

abuser[s]" of the judicial system).  Plaintiff's becoming such a

notorious abuser helps no one, least of all Plaintiff himself.

The United States' Motion to be substituted in place of

individual Defendants as to the Federal Tort Claims Act ("FTCA")

claim is **GRANTED**.  See Doc. No. 16.  The United States' Motion

to Dismiss this Complaint is **GRANTED** in full.  See id.

Plaintiff having provided the court with no convincing reasons,

Plaintiff's Motion to Stay and/or Toll Plaintiff's Opposition to the Defendants' Forthcoming Response to the Complaint is **DENIED**. See Doc. No. 15. Plaintiff's Motion for Discovery is **DENIED**. See Doc. No. 18. Defendants' Consent Motion for an Extension of Time to Respond to Pending Motions Doc. Nos. 15 and 18 is **GRANTED**. See Doc. No. 19. The court **DIRECTS** the Clerk to remove this case from the court's docket.

The Clerk is further directed to forward a copy of this Memorandum Opinion and Order to counsel of record and Plaintiff, pro se.

**IT IS SO ORDERED** this 12th day of April, 2017.

Enter:

David A. Faber
Senior United States District Judge